

**SIGNED this 17th day of May, 2012**

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

In re

DANIEL KEITH STILTNER,

Debtor.

No. 11-50122
Chapter 7

## MEMORANDUM OPINION
## SUPPLEMENTING APRIL 3, 2012 ORAL RULING

Appearances:

| | | |
|---|---|---|
| Margaret B. Fugate, Esq. | Thomas R. Banks, Esq. | Mary Foil Russell, Esq. |
| 114 E. Market Street | Post Office Bank 400 | Post Office Box 274 |
| Johnson City, TN 37605 | Elizabethton, TN 37644 | Bristol, TN 37621 |
| *Attorney for Mountain States Health Alliance* | *Attorney for Daniel Stiltner* | *Attorney for Chapter 7 Trustee* |

**Marcia Phillips Parsons, United States Bankruptcy Judge**.  This case came before the court for hearing on April 3, 2012, upon the objection by Mountain States Health Alliance ("MSHA") to the debtor Daniel Keith Stiltner's exemption in a medical malpractice claim. MSHA argued that the Debtor should be judicially estopped from asserting an exemption in the claim and from sharing in any surplus remaining after payment to his creditors because he failed to list the medical malpractice claim in his original schedules.  At the conclusion of the hearing at which the Debtor was the only witness, the court overruled the objection for the reasons stated on the record and subsequently entered on April 5, 2012, a brief order. This memorandum opinion supplements the oral remarks of the court at the April 3, 2012 hearing.  This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

I.

On January 21, 2011, the Debtor commenced this chapter 7 case by filing a voluntary petition.  He testified that his bankruptcy filing was precipitated by almost $400,000 in uninsured medical expenses resulting from kidney surgery complications that left him without a kidney, dependent upon dialysis, and disabled from meaningful employment. Prior to his bankruptcy filing, the Debtor had retained personal injury attorney Bob McDaniel Green to represent him.  By letter dated November 8, 2010, Mr. Green gave notice to Johnson City Medical Center, two physicians, and their medical group of his representation, and that the Debtor would be pursuing a medical malpractice claim against them, although no suit was filed before the bankruptcy filing. Notwithstanding the Debtor's retention of Mr. Green, the Debtor did not list the medical malpractice claim on "Schedule B – Personal Property" in response to question 21: "Other contingent and unliquidated claims of every nature . . . ."  The Debtor testified that he discussed the medical malpractice claim with his bankruptcy attorney Thomas Banks before signing and filing his petition and schedules.  Mr. Banks concluded, however, apparently erroneously, that the statute of limitations had run on the claim because it was more than a year old[1] and consequently did not list

---

[1] The Debtor testified that his surgery was on January 7, 2010, and Mr. Banks indicated that his discussion with the Debtor about his potential malpractice cause of action took place on January 18, 2011.

2

the claim in the Debtor's schedules. The Debtor's testimony was confirmed by Mr. Banks' affidavit.

At the 11 U.S.C. § 341(a) meeting of creditors held on February 23, 2011, the Debtor voluntarily disclosed that he had a potential medical malpractice claim. After the meeting, the Debtor continued to apprise the chapter 7 trustee Mary Foil Russell ("Trustee") of developments concerning the claim, including the filing by Mr. Green on May 6, 2011, of a medical malpractice action on behalf of the Debtor in the Circuit Court for Washington County, Tennessee. Nonetheless, the Debtor waited until December 7, 2011, to file amended Schedules B and C, which listed and claimed an exemption of $7,500 in a "[p]otential medical malpractice claim against Bill Boswell, MD, David Jones, MD, East Tennessee Urologic Associates, and Johnson City Medical Center" with an "[u]nknown" value.

In response, after first seeking and obtaining an extension of time in which to object, MSHA timely filed on March 7, 2012, the objection to the Debtor's claimed exemption that was before the court. MSHA stated in the objection that the defendants in the state court medical malpractice action, which apparently included MSHA as the owner and operator of Johnson City Medical Center, had filed a motion on June 18, 2011, seeking dismissal of the Debtor's lawsuit based upon judicial estoppel and the Debtor's lack of standing. Ms. Russell, as chapter 7 trustee, then moved to be substituted as the plaintiff or, in the alternative, to intervene as the real party in interest, which motion the state court granted.

As to the Debtor's claimed exemption in this court and MSHA's objection to that exemption, both the Debtor and the Trustee responded in opposition to MSHA's objection. The Debtor stated that the failure to list the claim in his original schedules was due to mistake, that he subsequently voluntarily corrected this mistake through his sworn testimony at his meeting of creditors, that the Trustee was fully apprised of the existence of the claim, and that no creditors were prejudiced by the initial omission. The Trustee fully supported the Debtor's response. The Trustee asserted that the Debtor should not be estopped from recovering exempt or surplus funds, argued that the judicial estoppel cases cited by MSHA in support of its objection were distinguishable from the facts of the instant case, observed that a layperson could readily fail to understand that a lawsuit that had not yet been filed should be scheduled, and noted that MSHA was not prejudiced or damaged by the

3

Debtor's failure to list the claim in his original schedules.

In overruling MSHA's objection to the Debtor's exemption at the conclusion of the April 3, 2012 hearing, this court cited the Sixth Circuit Court of Appeals' most recent decision on judicial estoppel, *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010). In the *White* decision, the court recognized that judicial estoppel is inapplicable to conduct that is "nothing more than mistake or inadvertence," or in the "absence of bad faith." *Id.* at 476. Finding the failure of the Debtor in the present case to be mistake by Debtor's counsel rather than an intentional omission designed to conceal the cause of action, this court held that the Debtor was not judicially estopped from now amending his schedules to claim the exemption. Because the court's ruling was given in a summary fashion, it may be helpful to the parties and any reviewing court if this court's findings and conclusions on this issue were more fully set out.

II.

Federal Rule of Bankruptcy Procedure 1009 provides that "[a] voluntary petition, list, schedule, or statement may be amended by a debtor as a matter of course at any time before the case is closed." The Sixth Circuit Court of Appeals has explained that Rule 1009 recognizes a "permissive approach" to schedule amendments by a debtor, and that absent bad faith or concealment of property, a bankruptcy court lacks the discretion to reject a proposed amendment, including an amendment to a list of exempt property, made before the case is closed. *See Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). It has been recognized that bad faith in the context of amending exemptions is determined by an examination of the totality of the circumstances. *In re Rossi*, No. 11-8048, 2012 WL 913732, *8 (B.A.P. 6th Cir. March 20, 2012) (citing *In re Colvin*, 288 B.R. 477, 481-482 (Bankr. E.D. Mich. 2003)).

In the instant matter, the Debtor's bankruptcy case remains open and has never been closed. Other than the fact of the initial omission itself, there was no evidence that the Debtor was acting in bad faith or in an attempt to conceal his possible malpractice claim. As previously noted, the Debtor informed his bankruptcy attorney prior to filing his bankruptcy case about the claim and it was his attorney who erroneously concluded that the claim should not be scheduled. The Debtor also advised his personal injury attorney, before the bankruptcy filing, that he was seeking

4

bankruptcy relief. At his meeting of creditors which took place 33 days after the bankruptcy filing, the Debtor fully disclosed in sworn testimony on the record[2] that he had a potential medical malpractice claim, and then subsequent to the meeting he followed up this disclosure by continuing to answer and provide any information requested by the Trustee. Granted, the Debtor rather than the Trustee initiated the state court action, and the Debtor waited until December 7, 2011, to formally amend his schedules and claim an exemption. When asked about the delay, the Debtor responded that he did not understand all of the paperwork and that he had relied on his attorneys to advise him as to any necessary steps. The Debtor acknowledged that he met with the personal injury attorney after the bankruptcy filing in order to proceed with the lawsuit, but noted that this meeting took place after his meeting of creditors when he had already fully disclosed the malpractice claim. This court found the Debtor highly credible in all respects. This was simply not a case of bad faith or intentional concealment of property. Consequently, there was no basis to deny the Debtor's amendments under Rule 1009.

MSHA's objection to the Debtor's claimed exemption was not premised on Rule 1009 or any argument that the amendments themselves should be stricken. Rather, MSHA's contention was that the exemption, and any benefit in the lawsuit including any surplus, was barred by judicial estoppel. The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *White*, 617 F.3d at 476 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808 (2001)). "The doctrine is 'utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id.* (quoting *Browning v. Levy*, 283 F. 3d 761, 775 (6th Cir. 2002)). The Sixth Circuit has explained that in the bankruptcy context, "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position, either as a preliminary matter or as part of a final disposition.'" *Id.; see also Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998) (Judicial estoppel "applies only when a party shows

---

[2] Federal Rule of Bankruptcy Procedure 2003(b)(1) and (c) requires the meeting of creditors held pursuant to § 341(a) of the Bankruptcy Code to include an examination of the debtor under oath and for the examination to be recorded.

that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court.").

Applying these judicial estoppel components to the question of whether the Debtor's claimed exemption should be denied is difficult because there is no "prior proceeding" or "prior court." Both the Debtor's initial failure to list the potential asset and his subsequent amendment to exempt the asset took place in the same proceeding–this bankruptcy case–and before the same court. Moreover, the court questions whether the claim of exemption in an asset after initially failing to list the asset constitutes the assertion of a "contrary" position as contemplated by the judicial estoppel doctrine, any more than any amendment would represent a contrary position. *See In re Daniel*, 205 B.R. 346, 348 (Bankr. N.D. Ga. 1997) ("The broad right to amend [under Rule 1009], together with the underlying policies of the bankruptcy system, undermines any judicial estopped argument in a Chapter 7 case.").

Presumably because of this problematic fit, MSHA cites no cases where judicial estoppel has been applied under similar facts to preclude a debtor from claiming an otherwise proper exemption. Instead, MSHA directs the court to those decisions arising in the paradigmatic context in which judicial estoppel has been successfully applied in this district, prohibiting a debtor from pursuing in federal district court a cause of action after failing to timely disclose the action in his bankruptcy case. *See White*, 617 F.3d at 478 (affirming district court's dismissal of sexual harassment claim based on judicial estoppel because plaintiff failed to disclose claim in her chapter 13 prior to plan confirmation); *Seus v. Kohler Co.*, 3:11-CV-237, 2012 WL 1071235, *4 (E.D. Tenn. Mar. 29, 2012) (court granted defendants' motions to dismiss misrepresentation and related claims because plaintiff never disclosed claims in his chapter 7); *Walker v. Moldex Metric, Inc.*, No. 2:10-CV-164, 2011 WL 3044529, *5 (E.D. Tenn. July 25, 2011) (court granted defendant's motion for summary judgment of personal injury claim because plaintiff did not disclose claim in chapter 7 case before it was closed); *Sexton v. State Farm Fire & Cas. Co.*, No. 3:09-CV-535, 2011 WL 2516742, *5 (E.D. Tenn. June 23, 2011) (court granted defendant's motion for summary judgment on fire insurance claim, precluding plaintiffs from recovering for loss of property not disclosed in chapter 13 before plan confirmation); *Auday v. Wet Seal Retail, Inc.*, No. 1:10-CV-260, 2011 WL 1099796, *7 (E.D. Tenn. Mar. 22, 2011) (court granted defendant's motion for judgment on the pleadings of

6

employment discrimination claim because plaintiff failed to disclose her claim in her chapter 7 and "made no meaningful attempt to amend her bankruptcy filings or apprise the bankruptcy court of the omission"); *Scofield v. TVA*, No. 3:09-CV-64, 2011 WL 1099849, *5 (E.D. Tenn. Mar. 22, 2011) (court granted defendant's summary judgment on plaintiffs' property damage claim where plaintiffs failed to disclose claim in chapter 13 before plan confirmation); *Coffelt v. Am. Frozen Foods, Inc.*, No. 1:10-CV-69, 2010 WL 4238005, *5 (E.D. Tenn. Oct. 21, 2010) (court granted defendant's motion to dismiss plaintiff's wrongful discharge claim where plaintiff failed to disclose claim in chapter 13 before plan confirmation); *Paris v. Sansom*, No. 1:06-CV-98, 2007 WL 1345368, *8 (E.D. Tenn. May 7, 2007) (court granted defendants' motion for summary judgment on race discrimination claim because plaintiff failed to disclose claim in chapter 13 case); *Cluesman v. United States*, No. 2:06-CV-39, 2007 WL 869603, *3 (E.D. Tenn. Mar. 20, 2007) (court granted defendant's motion for summary judgment on plaintiff's medical malpractice claim because claim not disclosed in chapter 7).

MSHA argues by analogy to these cases that this court "adopted" the assertion that no malpractice claim existed, arguably implicit in the Debtor's failure to initially schedule the claim, when it entered a discharge order on April 29, 2011, granting the Debtor a chapter 7 discharge. *See Auday*, 2011 WL 1099796, *3 (concluding that the bankruptcy court adopted the debtor's position as a final disposition when it entered the discharge order). However, when the discharge order was entered, the Debtor had already voluntarily testified on the record under oath at his meeting of creditors on February 23, 2011, that he had a medical malpractice claim. Thus, this case is distinguishable from *Auday* where the debtor therein made no effort to disclose her cause of action until long after her discharge was granted. *Id.* To the extent that this court adopted any position of the Debtor by entering the discharge order it was the position previously disclosed by the Debtor at his meeting of creditors that he had a potential medical malpractice claim. Accordingly, judicial estoppel does not preclude the Debtor from asserting an exemption in the claim because this court never adopted a contrary position.

Moreover, as discussed by this court at the conclusion of the hearing on this matter, "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *See White*, 617 F.3d at 476 (quoting *Browning v. Levy*, 283 F.3d 761, 667 (6th Cir.

2002)). "Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) where the debtor lacks knowledge of the factual basis of the undisclosed claims; and (2) where the debtor had no motive for concealment." *Id.* Here, while the Debtor knew that he had a potential malpractice claim, his bankruptcy attorney advised him that it was not necessary to schedule the claim. Thus, any knowledge was negated by his attorney's counsel. As to a motive for concealment, the primary target of the Debtor's potential malpractice claim, Johnson City Medical Center/MSHA, was also the Debtor's largest creditor.[3] As such, it would not be logical for the Debtor to believe that he could conceal the lawsuit from his bankruptcy case and his creditors. This lack of motive was readily demonstrated by the Debtor's forthrightness at his meeting of creditors.

Finally in this regard, the Sixth Circuit has advised a court to consider a debtor's subsequent efforts to disclose an omitted claim when adjudging a debtor's good faith for judicial estoppel purposes. *Id.* at 478; *see also Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 426 (6th Cir. 2005) (discussing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894 (6th Cir. 2004) ("Thus, under *Eubanks*, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional.")). The court of appeals has observed that "the extent of these efforts, together with their effectiveness," are important since the bankruptcy system depends on accurate and timely disclosures. *White*, 617 F.3d at 480. Further, efforts to correct the omission that come before defendants file a motion to dismiss in the separate action are more important than subsequent efforts. *Id.*

As previously articulated, the Debtor fully disclosed his cause of action to his creditors at the § 341 meeting held on February 23, 2011, before the lawsuit was even commenced almost three months later, a fact that MSHA does not dispute. Moreover, there was no evidence that the disclosure was ineffective or that the Trustee did not have the necessary information to pursue the

---

[3] In this bankruptcy case, MSHA has filed a proof of claim in the amount of $271,330 for unpaid medical services.

claim. This prompt disclosure at the Debtor's meeting of creditors appears to distinguish the current case from all of the cases cited by MSHA where judicial estoppel was applied. *Compare White*, 617 F.3d at 481 (citing the lack of evidence that the debtor's creditors were made aware of the cause of action in concluding that the debtor had not effectively or adequately disclosed his claim), *with Eubanks*, 385 F.3d at 895 (refusing to apply judicial estoppel where debtor informed trustee at the meeting of creditors about the omitted cause of action, thereby placing the trustee and court on notice of claim notwithstanding debtor's failure to formally amend his schedules). While the Trustee rather than the Debtor should have initiated the lawsuit, again this misstep appears to be the mistake of Debtor's personal injury attorney since he knew of the Debtor's bankruptcy filing. Nonetheless, there appears to be no intent to harm or prejudice creditors, and no harm or prejudice has been demonstrated or even alleged as the Trustee has now been substituted as the plaintiff. And, while the court does not mean to suggest by anything in this opinion that the Debtor was under no duty to formally amend his schedules in a more timely fashion, his failure is insufficient to demonstrate lack of good faith in light of all of the evidence including his previous full disclosure of the claim on the record. *See Eubanks*, 385 F.3d at 895. Accordingly, judicial estoppel is inapplicable to bar the Debtor's exemption claim in the state court lawsuit.[4]

# # #

---

[4] As previously stated, MSHA seeks in its objection to not only deny the Debtor's exemption claim, but to also preclude him from recovering any surplus in the state court action. This court declines to consider this issue, since MSHA has also raised the judicial estoppel argument in the state court proceeding. *See Maxwell v. MGM Grand Detroit, LLC*, No. 03-737134, 2007 WL 2050795, *9 (E.D. Mich. July 16, 2007) (refusing to grant the plaintiff's request that the defendant's judicial estoppel argument be resolved by the bankruptcy court, since it was before the district court that the self-serving contradiction occurred when the debtor commenced her lawsuit) (quoting *In re Dewberry*, 266 B.R. 916, 920 (Bankr. S.D. Ga. 2001) (court where age discrimination case is pending rather than bankruptcy court should determine whether judicial estoppel should be applied to prevent debtor from pursing claim that was not disclosed in bankruptcy case)).

Under Tennessee law, judicial estoppel "does not apply where there is an explanation showing such statement was inadvertent, inconsiderate, mistaken, or anything short of a 'willfully false' statement of fact. Anything short of 'conscious and deliberate perjury' will not give rise to judicial estoppel." *See Reynolds v. Tognetti*, No. W2010-00320-COA-R3-CV, 2011 WL 761525, *5 (Tenn. App. Mar. 4, 2011) (allowing debtor to proceed with malpractice claim despite having never undertaken any effort to advise bankruptcy court of claim before closure of bankruptcy case) (quoting *D.M. Rose & Co. v. Snyder*, 206 S.W.2d 897, 906 (Tenn. 1947)).